LITTLER MENDELSON, P.C.
STEVEN A. GROODE, Bar No. 210500
sgroode@littler.com
2049 Century Park East, 5th Floor
Los Angeles, CA  90067.3107
Telephone: 310.553.0308
Facsimile: 310.553.5583

LITTLER MENDELSON, P.C.
JOHN H. ADAMS, JR., Bar No. 253341
jhadams@littler.com
500 Capitol Mall, Suite 2000
Sacramento, CA  95814
Telephone: 916.830.7200

Attorneys for Defendant
MEDLINE INDUSTRIES, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO JIMENEZ,<br><br>             Plaintiff,<br><br>v.<br><br>MEDLINE INDUSTRIES, INC., MARCUS RODRIGUEZ, and DOES 1-25, inclusive,<br><br>             Defendant. | Case No.  2:17-cv-00536-KJM-DB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MEDLINE INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>Date:     July 13, 2018<br>Time:    10:00 a.m.<br>Ctrm.:   3, 15th Floor<br>Judge:  Hon. Kimberly J. Mueller |

Firmwide:155212265.3 049790.1040                                                           Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS .............................................................................................. 2

    A. Plaintiff's Employment with Medline ................................................................ 2

    B. Medline's Control Over Plaintiff's Employment .............................................. 2

    C. Plaintiff's Accident While Working at Medline ................................................ 4

    D. Plaintiff's Workers' Compensation Claim ......................................................... 4

III. ARGUMENT .................................................................................................................. 4

    A. Standard For Summary Judgment ...................................................................... 4

    B. The California Workers' Compensation Act Preempts Plaintiff's Claims Because Plaintiff Was An Employee of Medline for Purposes of Workers' Compensation As A Matter of Law .................................................................... 5

    C. Plaintiff Does Not Meet The Test To Be An Independent Contractor ........... 10

        1. Plaintiff Is An Employee Under The Dynamex Test .......................... 10

        2. Plaintiff Is An Employee Under The Borello Test ............................. 11

        3. The Services Agreement Between AtWork and Medline Is Of No Effect ..................................................................................................... 13

IV. CONCLUSION ............................................................................................................. 13

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA 90067.3107
310.553.0308

i.

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*
(1986) 477 U.S. 242 ........................................................................................................... 4, 5

*Arriaga v. County of Alameda*
(1995) 9 Cal.4th 1055 ................................................................................................ 5, 6, 8, 9

*Branch v. Homefed Bank*
(1992) 6 Cal. App. 4th 793 ..................................................................................................... 5

*Celotex Corp. v. Catrett*
(1986) 477 U.S. 317 ............................................................................................................... 4

*County of Los Angeles v. Workers' Comp. Appeals Bd.*
(1981) 30 Cal.3d 391 .............................................................................................................. 9

*Dynamex Operations West, Inc. v. Lee*
(2018) 4 Cal. 5th 903, 916 ............................................................................................. 10, 11

*Hine v. Dittrich*
(1991) 228 Cal.App.3d 59 ...................................................................................................... 5

*Laeng v. Workmen's Comp. Appeals Bd.*
(1972) 6 Cal.3d 771 ............................................................................................................ 8, 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
(1986) 475 U.S. 574 ............................................................................................................ 4, 5

*Riley v. Southwest Marine, Inc.*
(1988) 203 Cal.App.3d 1242 .................................................................................................. 5

*S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*
(1989) 48 Cal.3d 341 ................................................................................................. 10, 11, 12

*Santa Cruz Poultry v. Superior Court*
(1987) 194 Cal. App. 3d 575 ........................................................................................ *passim*

*Whitman v. Mineta*
(9th Cir. 2008) 541 F.3d 929 .................................................................................................. 5

**Statutes**

Cal. Lab. Code § 2810.3 ............................................................................................................. 1

California's Workers' Compensation Act. ................................................................ 1, 2, 5, 8, 10

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

i.

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE(S)

Labor Code § 2810.3(b)(1) and (2) .................................................................................................8

Labor Code § 3351 ......................................................................................................................5, 8

Labor Code § 3601 ..........................................................................................................................6

Labor Code § 3602 .......................................................................................................................2, 5

**Other Authorities**

Fed. R. Civ. P. 56(a) .......................................................................................................................4

Fed. R. Civ. P. 56(c)(1) ...................................................................................................................4

LITTLER MENDELSON, P.C.
2049 CENTURY PARK EAST
5TH FLOOR
LOS ANGELES, CA  90067.3107
310.553.0308

ii.

## I. INTRODUCTION

The instant Motion presents a simple question: was Plaintiff Antonio Jimenez ("Plaintiff") an employee or independent contractor of Defendant Medline Industries, Inc. ("Medline"), when he was injured in an industrial accident on Medline's premises while working at and on behalf of Medline?  Because Plaintiff was an employee of Medline as a matter of law, his claims for (1) negligent hiring, training and supervision; and (2) negligence,[1] which solely arise out of the accident, are preempted by California's Workers' Compensation Act.  Indeed, the California Workers' Compensation Act is designed to address this very scenario – an injury at work. Negligence claims of varying types have long been preempted by the Workers' Compensation Act. *See, e.g.*, *Santa Cruz Poultry v. Superior Court* (1987) 194 Cal. App. 3d 575, 578 (negligence claim preempted where individual placed by staffing agency was injured on first day working for the client-employer).  Plaintiff's claim is no different.

Moreover, California's regulatory scheme is in accord.  *See* Cal. Lab. Code § 2810.3 (client employer shares civil legal responsibility and liability for all workers supplied by labor contractor for, *inter alia*, the failure to secure valid workers' compensation coverage).  In other words, if the staffing agency had not obtained workers' compensation coverage for Plaintiff, Medline would have been bound by California law to provide such coverage itself, further establishing that Medline was Plaintiff's employer for workers' compensation purposes.

Finally, the Workers' Compensation Act functioned exactly as it was supposed to here: Plaintiff was injured on the job, and he received workers' compensation benefits for that injury. Through this lawsuit, Plaintiff seeks to "double-dip" by receiving compensation twice for the same injury.  But, the law does not permit Plaintiff to circumvent the Workers' Compensation Act to pursue negligence claims arising out of his industrial accident.  Indeed, Plaintiff's claims rest on allegations that Medline employee Marcus Rodriguez was unfit to operate a forklift; that Medline knew or should have known of his lack of fitness to operate a forklift; that Rodriguez failed to safely

---

[1] Plaintiff's negligence claim is also alleged against individual defendant Marcus Rodriguez, a former employee of Medline who was involved in the accident at issue. However, Plaintiff never served Rodriguez with his Complaint or First Amended Complaint. Plaintiff's time to serve Rodriguez has run, and he is not a party to this action.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040                                    Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

operate his forklift and that this breach resulted in harm to Plaintiff.

However, because Medline undoubtedly was a joint employer of Plaintiff, Plaintiff's claims are preempted by the California Worker's Compensation Act. *See* Labor Code § 3602 (an employee suffering injuries arising out of and in the course of his or her employment has exclusive redress for such injuries through California's workers' compensation system).  Accordingly, this case is ripe for summary judgment.

## II. STATEMENT OF FACTS

### A. Plaintiff's Employment with Medline.

Medline is a manufacturer and distributor of medical products that primarily serves hospitals and medical service providers.  (Medline Industries, Inc.'s Separate Statement of Undisputed Material Facts ("UMF", 1.)  Plaintiff was hired by AtWork Personnel Services ("AtWork"), a staffing agency, in or around September 2015.  (UMF 2.)  AtWork and Medline have a services agreement in place. (UMF 3.)  Plaintiff was placed with Medline and began working in Medline's warehouse in Lathrop, California, in early- to mid-October 2015.  (UMF 4.)  Plaintiff's only placement through AtWork was at Medline.  (UMF 5.)  Plaintiff worked at Medline for approximately two weeks. (UMF 6.)  Plaintiff's job duties primarily consisted of operating a forklift and "order selecting" products from shelves in the warehouse so that they could be shipped to Medline's customers. (UMF 7.)

### B. Medline's Control Over Plaintiff's Employment.

Medline had two warehouses at its facility in Lathrop – one smaller and one larger. (UMF 8.) Plaintiff began working in Medline's larger warehouse, then switched to its smaller warehouse after a few days.  (UMF 9.)  Plaintiff was informed of the switch by a receptionist for AtWork Personnel. (UMF 10.)  Medline Warehouse Manager Scott Saling solely made the decision to move Plaintiff from the larger to the smaller warehouse based on his assessment of Medline's needs in each building at the time.  (UMF 11.)  After making the decision, Saling directed AtWork Personnel to notify Plaintiff that he should begin reporting to the smaller building. (UMF 12.)  Saling used the same procedure to communicate the schedule he set for Plaintiff, including the days he would work and his start time; AtWork merely passed the information on to Plaintiff. (UMF 13.) For example,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040                             2.                           Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

the AtWork receptionist simply called Plaintiff to tell him what time to arrive for work and where to report. (UMF 14.) However, once there, Medline would tell him what he needed to do. (UMF 15.)

For example, every morning, Plaintiff attended a meeting run by a Medline supervisor who would instruct all the employees, whether temporary or direct hires, including Plaintiff, their assignments for the day. (UMF 16.) The Medline supervisor would also tell the employees what to expect for the day, including the number of pallets and amount of product expected to go out that day. (UMF 17.) Plaintiff considered the Medline employee who ran the morning meetings to be his supervisor. (UMF 18.) Occasionally, other Medline employees would direct Plaintiff to stop working on his assigned duties to help with another task. (UMF 19.) Plaintiff believed these Medline employees' titles to be "Leads." (UMF 20.) Leads occasionally directed Plaintiff's work. (UMF 21.) Leads also informed Plaintiff and other employees when overtime work was available. (UMF 22.) Plaintiff's supervisor and the Leads were Medline employees. (UMF 23.) AtWork had no supervision on site and never directed Plaintiff's day-to-day activities at Medline. (UMF 24)

Plaintiff had an employee card issued by Medline with a bar code on it that he used to clock in and out at Medline's warehouse. (UMF 25.) If Plaintiff had any work-related issues, including being late or absent, Saling or a supervisor would decide if discipline was necessary, including termination of employment. (UMF 26.) Plaintiff believed that any decision to discipline him would have been made by Medline alone. (UMF 27.)

Plaintiff used a reach forklift and occasionally a cherry picker to perform his work for Medline. (UMF 28.) He did not use any other equipment. (UMF 29.) Medline provided both the reach forklift and cherry picker that Plaintiff used. (UMF 30.) Plaintiff did not provide any of his own equipment. (UMF 31.)

Plaintiff's work for Medline was part of Medline's business and was identical to the work performed by Medline's direct hires. (UMF 32.) Plaintiff did not own or operate his own business. (UMF 33.) Plaintiff was paid by the hour, not per job. (UMF 34.) Plaintiff could not have earned additional income for good performance or been penalized economically for poor performance. (UMF 35.) Plaintiff's employment was at-will. (UMF 36.)

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040    3.    Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

**C.   Plaintiff's Accident While Working at Medline.**

The morning of October 26, 2015, Plaintiff was involved in an accident while working at Medline's warehouse. (UMF 37.) While Plaintiff was operating his forklift, the fork of a forklift being operated by Medline employee Marcus Rodriguez bumped into Plaintiff. (UMF 38.) The blade of Rodriguez's forklift pierced Plaintiff's buttocks. (UMF 39.) Plaintiff was transported by ambulance to the hospital, where he received medical treatment. (UMF 40.)

**D.   Plaintiff's Workers' Compensation Claim.**

After his accident in the Medline warehouse, Plaintiff filed a workers' compensation claim for the injury he suffered. (UMF 41.) Plaintiff settled his workers' compensation claim, receiving approximately $8,000. (UMF 42.)

## III.   ARGUMENT

**A.   Standard For Summary Judgment.**

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 250.

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 325. The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* (1986) 475 U.S. 574, 585. In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, *supra*, at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040          4.          Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

judgment." *Anderson*, *supra*, at 247–48. In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, *supra*, at 587-88; *Whitman v. Mineta* (9th Cir. 2008) 541 F.3d 929, 931. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.* (1968) 391 U.S. 253, 289).

**B.   The California Workers' Compensation Act Preempts Plaintiff's Claims Because Plaintiff Was An Employee of Medline for Purposes of Workers' Compensation As A Matter of Law.**

Under the California Workers' Compensation Act (the "Act"), an employee suffering injuries arising out of and in the course of his or her employment has exclusive redress for such injuries through California's workers' compensation system. CAL. LABOR CODE § 3602. The Act provides the exclusive remedy for injuries resulting from the negligent conduct of an employer, and courts have consistently found that the Act's preemption of such negligence claims is appropriate. *See Branch v. Homefed Bank* (1992) 6 Cal. App. 4th 793, 797-98, n.5 (holding that emotional distress damages were not available based on a claim of negligent misrepresentation, noting that the Act presumably preempted plaintiff's claims for negligent infliction of emotional distress); *Hine v. Dittrich* (1991) 228 Cal.App.3d 59, 63-64, n.4 (observing that claim of negligent retention and supervision would likely be barred by the exclusive remedy of the workers' compensation laws as well); *Riley v. Southwest Marine, Inc.* (1988) 203 Cal.App.3d 1242, 1247, n.3 (negligent training and supervision claims are preempted by an exclusive remedy in the nature of workers' compensation).

"'An employer-employee relationship must exist in order to bring the ... Act into effect.'" *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1060-1061 (quoting *County of Los Angeles v. Workers' Comp. Appeals Bd*. (1981) 30 Cal.3d 391, 396 (internal citations omitted). "However, **the coverage of the Act extends beyond those who have entered into 'traditional contract[s] of hire.**'" *Id.* at 1061 (*quoting Laeng v. Workmen's Comp. Appeals Bd*. (1972) 6 Cal.3d 771, 776) (emphasis added).

Under Labor Code section 3351, any person who renders service to another is presumed to be an "employee." *Id*. at 1061.  Indeed, for purposes of the Act, Labor Code section 3351 defines the

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040         5.         Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

term "employee" broadly to mean "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written…" *Id*. at 1061 (*citing Laeng*, *supra*, at 776-777). "The purpose of the Act is to protect individuals against the special risks of employment." *Id*. The legislature intended the Act to provide comprehensive coverage of injuries in the employment context; it "accomplishes this goal by defining 'employment' broadly in terms of 'service to an employer' and by including a general presumption that any person 'in service to another' is a covered 'employee.'" *Id*. Importantly, **for purposes of workers' compensation, an employee may have more than one employer**, and the second or "special" employer may have the same immunity from a negligence claim as the first or "general" employer. *Santa Cruz Poultry v. Superior Court* (1987) 194 Cal. App. 3d 575, 578. The special employer's immunity from a common law tort action flows "from the exclusivity of the compensation remedy embodied in Labor Code section 3601." *Id*. "[W]here the general employer is a temporary employment agency […] and the business to which the employee is assigned has the right of supervision and direction of the employment duties, the typical result is to find the existence of a special employment relationship." *Id*. (*citing* 1C Larson, *Workmen's Compensation Law*, § 48.00, p. 8-405.) "[E]mployers obtaining workers from [a temporary employment agency] have usually, but not invariably, been held to assume the status of special employer." *Id*. (*citing* 1C Larson, *Workmen's Compensation Law*, § 48.23, pp. 8-488 - 8-489, fns. omitted.) For purposes of determining whether the worker's compensation system covers an employee, the "definitional reach of these covered employment relationships is very broad." *Id*. at 583–584. "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." *Id*. "Necessarily the other side of that coin is a presumption against the availability of a tort action where an employment relation exists. One result cannot exist without the other." *Id*. "Where the facts of employment are not disputed, the existence of a covered relationship is a question of law. *Id*. at 584.

This Court need look no further than the California Court of Appeal's decision in *Santa Cruz Poultry v. Superior Court* (1987) 194 Cal. App. 3d 575, 578, to conclude that Plaintiff's claims are preempted by the Act as a matter of law. In *Santa Cruz Poultry*, the plaintiff was a temporary

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040        6.        Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

employee furnished to the defendant by staffing agency Manpower, Inc. *Santa Cruz Poultry*, *supra*, at 577. The plaintiff sued Santa Cruz Poultry ("SCP") for negligence for an industrial accident suffered while working for SCP. *Id.* The plaintiff was on Manpower's payroll, his work assignment at SCP was for one day only and an SCP employee supervised and directed the plaintiff's work. *Id.* The trial court found that SCP had the ability to control the plaintiff's work, including details relating to his job performance at the time of his injury. *Id.* at 577-578. The plaintiff offered as evidence documents in which Manpower asserted that Manpower, not the company to which the employees may be assigned, is the employees' employer, as well as deposition testimony from SCP's president stating that the plaintiff was ***not*** SCP's employee – he was Manpower's employee. *Id.* SCP moved for summary judgment on the grounds that workers' compensation was the plaintiff's exclusive remedy; the trial court denied the motion. *Id.* at 577. The appellate court issued a peremptory writ of mandate directing the trial court to vacate its order denying summary judgment and to enter summary judgment in favor of SCP. *Id.* at 584. The court held that since SCP supervised plaintiff and controlled his employment, SCP was plaintiff's special employer and accordingly was immune to plaintiff's negligence action. *Id.* The court found that because the plaintiff worked under the supervision and control and at the pleasure of SCP, just like any employee of SCP, the plaintiff's subjective intentions regarding his legal relationship with SCP were irrelevant. *Id.* at 583. Accordingly, the plaintiff was covered by worker's compensation for his injury, and "no rational reason" justified allowing him to maintain a negligence action again SCP when no regular employee of SCP could do so. *Id.* Further, the court reasoned, the plaintiff reaped the benefit of his special employment relationship with SCP – workers' compensation coverage, including quick recovery and simplified procedures – justifying the loss of his right to sue in tort. *Id.* Accordingly, plaintiff "as a matter of law is deemed to have made the bargain whereby tort recovery is traded for workers' compensation recovery. The fact he has not one, but two, employers is irrelevant; the exclusivity here of compensation rests on the unmistakable existence of an employment relationship." *Id.*

The instant case is completely analogous to the situation in *Santa Cruz* Poultry, except the factual circumstances here even more strongly support an employment relationship.  As in *Santa Cruz Poultry*, Medline controlled Plaintiff's work, including the details of his job performance at the

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040   7.   Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

time of his injury. (*See* UMFs 11-13, 15-27.) As in *Santa Cruz Poultry*, Plaintiff worked at the pleasure of Medline, just like any regular Medline employee. (*See* UMFs 26, 27, 36.) Unlike in *Santa Cruz Poultry*, Plaintiff worked for his special employer for weeks, not just one day. (*See* UMF 6.) Accordingly, as in *Santa Cruz Poultry*, Plaintiff was covered by worker's compensation for his injury, and no rational reason justifies allowing him to maintain a negligence action again Medline when no regular employee of Medline could do so. Further, like the plaintiff in *Santa Cruz Poultry*, Plaintiff has reaped the benefit of the worker's compensation system, having filed a worker's compensation claim and received a settlement amount. (*See* UMFs 41, 42.) Plaintiff cannot now obtain a double recovery. [2] Accordingly, Medline was Plaintiff's employer as a matter of law.

While *Santa Cruz Poultry* is most on point, other related case law is in accord. For example, in *Arriaga*, the plaintiff filed a complaint alleging negligence against the County of Alameda. *Arriaga*, *supra*, at 1059. In lieu of paying a fine for a speeding ticket conviction, Arriaga was assigned by the Alameda County Sheriff's Department to work for the California Department of Transportation as part of the Sheriff's Department's Weekender Program, which allowed Arriaga to work off the speeding ticket as part of her sentence. *Id*. Arriaga alleged that she was exposed to toxic fumes while using a solvent to wash walls in a Department of Transportation building. *Id*. at 1059-1060. The County demurred to Arriaga's complaint, arguing, *inter alia*, that she was an employee under Section 3351 and as such her exclusive remedy was worker's compensation. *Id*. at 1060. The trial court agreed that Arriaga was covered by the Act, and it sustained the County's demurrer without leave to amend. The Court of Appeal affirmed. *Id*.

The California Supreme Court also affirmed, pointing to two other cases in which it found the Act covered non-traditional employees – *Laeng v. Workmen's Comp. Appeals Bd*. (1972) 6

---

[2] California's regulatory scheme is in accord. Under Labor Code section 2810.3(b)(1) and (2), "a client employer" such as Medline "shall share with a labor contractor" such as AtWork "all civil legal responsibility and civil liability for all workers supplied by that labor contractor for both of the following: (1) The payment of wages. (2) Failure to secure valid workers' compensation coverage as required by Section 3700." This means that if AtWork did not obtain workers' compensation coverage for Plaintiff, Medline would have been bound by California law to provide such coverage itself, further establishing that Medline was Plaintiff's employer for workers' compensation purposes.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040                    8.                    Case No. 2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

Cal.3d 771 ("*Laeng*") and *County of Los Angeles v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391 ("*County of Los Angeles*"). In *Laeng*, the California Supreme Court held that the Act applied to the plaintiff, who sued the City of Covina after he was injured as part of a tryout for a refuse crew worker position, even though he was not a City employee in a "strict, contractual sense" at the time of his injury. *Laeng*, *supra*, at 774. The Court reasoned that: (1) the City received a benefit from the plaintiff as an applicant; (2) the plaintiff subjected himself to the City's control, and the City assumed the responsibility of directing his activities; and (3) the plaintiff incurred his injury while undertaking a "special risk" of employment. *Id*. at 783. The Court held that plaintiff qualified as an employee in light of the Act's "purpose of protecting individuals from any special risks inherent in employment." *Id.* at 782-783.

In *County of Los Angeles*, the Court held that the Act covered the plaintiff, who worked as a night watchman for a Los Angeles County school district in exchange for general assistance. *County of Los Angeles*, *supra*, at 406. The plaintiff suffered an injury while working at a school and sought worker's compensation. *Id.* at 395-396. The County of Los Angeles argued that the Act did not apply to the plaintiff because the parties had no contract of employment. *Id.* at 397. The Court of Appeal held that plaintiff was an employee under the Act because: (1) he was in the service of the school when he was injured; (2) he subjected himself to the County's control, even though it did not directly supervise his day-to-day activities; (3) the County received a benefit from his work; and (4) the County exposed him to the same risks of employment faced by similar school employees. *Id*. at 405-406.

Drawing on its holdings in *Laeng* and *County of Los Angeles*, the Court in *Arriaga* held that, as a matter of law, the plaintiff was an employee under the Act. *Arriaga*, *supra*, at 1062. The Court reasoned that: (1) Arriaga was doing work for the State Department of Transportation within the County's boundaries and thus was in the service of both the State and the County; (2) both entities received a benefit from her work; (3) she was under the control of both entities, who could assign her to a job and tasks; and (4) her work exposed plaintiff to the same risks of employment that other transportation workers face. *Id*. at 1062-1063.

Plaintiff's work for Medline meets the requirements set forth in *Arriaga*, *Laeng* and *County*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040        9.        Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

*of Los Angeles*. Medline received a benefit from Plaintiff's work; Plaintiff subjected himself to Medline's control; Medline assumed the responsibility of directing Plaintiff's activities; and Plaintiff incurred his injury while undertaking a "special risk" of employment with Medline – the same risks of employment faced by similar Medline employees. Accordingly, each of these cases also demonstrates that Plaintiff's claims are preempted by the Act.

Because there is no genuine issue of material fact with respect to the control and supervision exercised by Medline over Plaintiff, a special employment relationship exists between Medline and Plaintiff as a matter of law. Therefore, Plaintiff's claims are preempted by the Workers' Compensation Act.

### C. Plaintiff Does Not Meet The Test To Be An Independent Contractor.

Lest there be any doubt at all about Plaintiff's employment relationship with Medline, which there is not, one need only consider the various standards to establish an independent contractor relationship to confirm that Plaintiff must have been an employee of Medline. After all, in performing work for Medline, Plaintiff could only be an independent contractor or an employee.

For nearly 30 years, courts have used the multi-factor test set forth in *S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations* (1989) 48 Cal.3d 341 to determine whether an individual who performs work for another is classified as an employee or an independent contractor. Recently, the California Supreme Court in *Dynamex Operations West, Inc. v. Lee* (2018) 4 Cal. 5th 903, 916 announced a new test for determination of whether a worker is an employee or independent contractor for purposes of California wage orders. *Id*. at 913. Under both the *Borello* test and *Dynamex* test, Plaintiff is properly classified as an employee of Medline.

#### 1. Plaintiff Is An Employee Under The *Dynamex* Test.

The California Supreme Court recently confirmed that all individuals who "would ordinarily be viewed as *working in the hiring business"* are presumed to be employees. *See Dynamex, supra,* at 916. Plaintiff cannot overcome that presumption, particularly given the strict standards applicable to establishing that one is an independent contractor. *See Id.*, at 944.

In *Dynamex*, the California Supreme Court held that in order to establish that one is an independent contractor for purposes of the Wage Orders, one must show that: (a) he is free from the

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040        10.        Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

control and direction of the alleged employer "in connection with the performance of the work, both under the contract for performance of the work and in fact; and (b) that the worker performs work that is outside of the usual course of the hiring entity's business; and (c) that the worker is customarily engaged in the independently established trade, occupation, or business of the same nature as the work performed." *Dynamex*, at 944.

Plaintiff cannot meet these requirements. First, he was not free from Medline's control and direction in connection with the performance of his work; he admitted that Medline's supervisors controlled and directed his work, including the specifics of his day-to-day performance, changes to his assigned tasks and how long he worked on any given day. (*See* UMFs 15-23.) Second, Plaintiff's work as a forklift operator for Medline was within the usual course of Medline's business. Medline is in the business of providing medical equipment to hospitals and other similar customers. Plaintiff's work selecting such equipment for delivery to Medline's customers is well within the usual course of Medline's business. (*See* UMF 32.) Finally, Plaintiff was not customarily engaged in an independently established trade, occupation, or business of the same nature as the work he performed for Medline. Plaintiff testified that he did not own his own business, and that his work was for Medline's business. (*See* UMFs 32, 33.)

Plaintiff cannot meet even one of the three factors a worker must meet in order to be classified as an independent contractor under the *Dynamex* test. Accordingly, application of the *Dynamex* test confirms that Plaintiff was an employee of Medline.

### 2. Plaintiff Is An Employee Under The *Borello* Test.

Similarly and alternatively, even if the test articulated in *Dynamex* were not the test here, Plaintiff's effort to cast himself as an independent contractor would be subject to the multi-factor test set forth in *Borello*. The *Borello* test focuses on the right to control, which depends on the answers to the following primary and secondary factors: (1) whether the work constitutes a distinct occupation or business; (2) whether the type of work is usually done under direction or by a specialist without supervision; (3) the level of skill required;  (4) who is the supplier of instrumentalities, tools, workplace; (5) what is the length of time services are to be performed; (6) what is the method of payment, by time or by job; (7) whether the work is part of the principal's regular business or not;

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040    11.    Case No.  2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

(8) belief the parties are creating an employer-employee relationship or not; (9) the worker's opportunity for profit or loss depending on managerial skill; (10) the worker's investment in equipment, materials or employment of helpers; (11) degree of permanence of the working relationship; and, (12) whether the service rendered is an integral part of the alleged employer's business. *Borello*, *supra* at 350-51, 354-55. "[T]he individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." (*Id*. at 350.)

Application of these factors also demonstrates that Plaintiff clearly was not an independent contractor. First, Plaintiff's work does not constitute a distinct occupation or business. Although Plaintiff has been employed as a forklift operator by employers other than Medline, he did not operate a forklift-for-hire concern, performing work as a service offered to clients. Second, Plaintiff's work was performed under direction of his supervisors at Medline, not by Plaintiff as a specialist without supervisions. Third, the level of skill required was not high as evidenced by the fact that Medline regularly hired and trained workers with little to no prior experience to operate forklifts in its warehouse. Fourth, Medline was the supplier of the instrumentalities and tools Plaintiff used to perform his work as well as the workplace itself; i.e., the forklift he drove and the warehouse in which he worked. Fifth, Plaintiff's employment with Medline was open-ended. Although he only worked for Medline for approximately two weeks, his employment there was not of a particular duration. Sixth, Plaintiff was paid hourly and not by the job. Seventh, as discussed above, the work was part of Medline's regular business. Eighth, Plaintiff apparently did not consider himself to be Medline's employee, but nonetheless understood that he was an employee generally being placed at Medline by AtWork. Ninth, Plaintiff had no opportunity for profit or loss depending on managerial skill or his performance. Tenth, the working relationship between Medline and Plaintiff was at-will. And Eleventh, the service Plaintiff rendered was integral to Medline's business because Medline relies on forklift operators to run its operations.

Of the eleven *Borello* factors, ten weigh heavily in favor of the determination that Plaintiff was Medline's employee. The other – Plaintiff's apparent consideration of himself as an employee of AtWork rather than Medline (eighth factor) – is immaterial under the circumstances and certainly

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040        12.        Case No. 2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

not enough to find that Plaintiff was an independent contractor.

### 3. The Services Agreement Between AtWork and Medline Is Of No Effect.

Medline anticipates that Plaintiff may argue that the services agreement between AtWork and Medline is sufficient to create a triable issue of material fact concerning Plaintiff's employment status. This is incorrect.

The agreement states that Medline and AtWork recognize that Medline is neither the employer nor the joint employer of AtWork's employees. However, courts have routinely held that the actual nature of the employment situation, not the contract, controls. *Santa Cruz Poultry*, *supra*, at 581 (*citing Kowalski v. Shell Oil Co*. (1979) 23 Cal.3d 168, 178 and *Martin v. Phillips Petroleum Co*. (1974) 42 Cal.App.3d 916, 920 (the reality of the employment relationship, not the parties' paper agreement, controls the parties' rights)). Because the actual nature of the employment situation here dictates that Plaintiff was Medline's employee for purposes of workers' compensation, the services agreement between AtWork and Medline has no legal effect on the issue presented, i.e., whether Plaintiff was an employee or an independent contractor.

## IV. CONCLUSION

For the foregoing reasons, Medline respectfully requests that the Court grant its motion and enter judgment against Plaintiff on both of Plaintiff's claims.

Dated: June 15, 2018                     Respectfully submitted,

                                         LITTLER MENDELSON, P.C.


                                         By: */s/ John H. Adams, Jr.*
                                              STEVEN A. GROODE
                                              JOHN H. ADAMS, JR.
                                              Attorneys for Defendant
                                              MEDLINE INDUSTRIES, INC.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:155212265.3 049790.1040              13.              Case No. 2:17-cv-00536-KJM-DB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEF. MEDLINE INDUSTRIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY PARTIAL SUMMARY JUDGMENT